## BOUKNIGHT v. DAVIS.

1. A Circuit Judge in open court has jurisdiction to dissolve a temporary injunction granted before the defendant, who moves to dissolve, had been made a party, especially where the temporary injunction was to continue until the further order of the court, with leave to the new parties thereby permitted to be added to move for a dissolution.

2. It cannot be said that plaintiffs were not permitted to go to trial on the merits where the temporary injunction previously granted in their favor was dissolved upon a ground which was decisive of the whole case.

3. Where a tax is imposed by the sovereign authority of the legislature to pay for township bonds which were issued in aid of railroads by the expressed consent of the people of such townships, and such consent, expressed at an election held for the purpose, is conceded in the pleadings, it matters not whether the formalities prescribed by a former unconstitutional act of the legislature for the ordering of such election were fully complied with; the debt so imposed is a valid debt of the townships under the express terms of the act imposing it.

4. *State* v. *Whitesides*, 30 S. C., 579, and *State* v. *Neely, Ibid.*, 587, approved.

Before WALLACE, J., Edgefield, March, 1890.

The opinion states the case.

*Mr. Ernest Gary*, for appellants.

*Messrs. Simkins & Butler,* contra.

October 15, 1890. The opinion of the court was delivered by

MR. JUSTICE McIVER. This action was commenced on the 21st of August, 1889, by the plaintiffs, as tax payers in Shaw Township, in the County of Edgefield. for the benefit of themselves as such, as well as for the benefit of the other tax-payers, who are too numerous to be made parties, against the defendant Davis, as auditor of Edgefield County, for the purpose of enjoining him and his successors in office from proceeding under the mandate of the county commissioners of said county to levy and assess a tax of four mills on the dollar of the taxable property in said township to pay certain bonds issued in behalf of said township to aid in the construction of the Carolina, Cumberland Gap and Chicago Railroad. On the same day that the action was commenced, the plaintiffs served a notice on the defendant Davis, that they would move before his honor, Judge Pressley, at his chambers, on the 27th day of August, 1889, for a temporary injunction, basing their application upon the allegations of the complaint, which was verified, and sundry affidavits, copies of which are set out in the "Case." On the day appointed for the hearing of the motion, Judge Pressley granted a temporary injunction, "until the further order of the court." In that order the judge further directed "that any person or persons holding any of the bonds of Shaw Township, or interested in the same, may hereby have leave to become a party or parties to this cause, and to move the court, as soon as he or they may desire, to dissolve said injunction, upon proper notice to the plaintiffs."

In pursuance of such leave, the other defendant, Geo. Potts, was, by an order of his honor, Judge Norton, dated 20th September, 1889, duly made a party defendant, as the holder of said bonds, and the plaintiffs were required to serve a copy of their complaint upon him within a specified time, and said Geo. Potts was granted leave to answer within twenty days from such service. The answer was duly served, and at the same time the plaintiffs were served with a notice that on the answer and other papers served therewith, a motion in behalf of said Geo. Potts would be made before the Court of Common Pleas at the ensuing

November term thereof, to dissolve the injunction granted by Judge Pressley. This motion was heard at the ensuing March term of the Court of Common Pleas (the case having been continued by consent at the November term) by his honor, Judge Wallace, who granted a short order dissolving said injunction. From this last mentioned order plaintiffs appeal upon the several grounds set out in the record, which substantially raise but two questions: 1st. Whether Judge Wallace had jurisdiction to grant the order in question. 2nd. If so, whether it was properly granted.

As to the question of jurisdiction, we do not see how there can be a doubt. This is not a case, as seems to be assumed by the argument of appellants, in which one Circuit Judge has undertaken to review and reverse the action of his predecessor. On the contrary, it was simply a motion to dissolve a temporary injunction previously granted, practically *ex parte* and without notice, so far as the defendant Potts, the moving party here, was concerned, for he was not a party to the action at the time the temporary injunction was granted. In such a case the Code (sec. 246) expressly provides for a motion to dissolve, "with or without answer." More than this, the order of Judge Pressley expressly grants the injunction only "until the further order of the court," and that judge, seeing that other parties should be brought before the court before any final determination should be made, even as to the matter of injunction, made provision for bringing in such other parties, and in terms provided that such parties when brought in might, on proper notice, move to dissolve the temporary injunction. We think it clear, therefore, that Judge Wallace could take jurisdiction of the motion to dissolve the temporary injunction.

The plaintiffs, by one of their grounds of appeal, seem to complain that they were not allowed to go to trial upon the merits of the case, the issues having been joined by the pleadings. The ground upon which Judge Wallace based his conclusion is not stated in his order, but it seems to be conceded in the arguments here on both sides, that Judge Wallace held that the act of 1888, entitled "An act to provide for the payment of township bonds issued in aid of railroads in this State" (20 Stat., 12), was final and conclusive of the questions raised by the pleadings. Assum-

ing this to be so, then if the judge was right in so holding, that was decisive of the merits of the case, and he might have gone further and rendered judgment dismissing the complaint, instead of confining himself to the granting of the motion to dissolve the temporary injunction, which, of course, would have followed necessarily from a judgment dismissing the complaint.

The real question, then, is whether the provisions of the act of 1888 are final and conclusive of the questions presented by the pleadings in this case. The scope and effect of that act have been so fully considered in the recent cases of *The State* v. *Whitesides* and *The State* v. *Neely* (30 S. C., 579 and 587), that it cannot be necessary to go into the discussion again. It is sufficient here to say, in general terms, that the legislature finding that certain townships had undertaken, ineffectually as it turned out, to impose upon themselves a legal liability for certain bonds issued by them in aid of the construction of railroads, determined by the exercise of its own legislative power to fix upon said townships a legal liability for the sums of money represented by said bonds, and by its own power of taxation to impose upon the taxpayers a tax sufficient to pay the same, because the qualified voters had expressed their willingness to be so taxed. Now, in this case there is no allegation that the qualified voters of Shaw Township had not expressed their willingness to be taxed for the payment of the bonds which had been issued to aid in the construction of the Carolina, Cumberland Gap and Chicago Railroad. On the contrary, it is alleged in the complaint that an election was held for the purpose of determining that question, and the result was declared by the proper authority to be in favor of the subscription to the railroad.

The gravamen of the complaint, as well as of the affidavits upon which the motion for the temporary injunction was based, is that there was informality and illegality in some of the preliminary steps required by the act of 1883 to be taken before the election could be ordered under the provisions of that act, notably in failing to procure the signature of a majority of the owners of real estate to the petition for the election or vote upon the question of subscription. Now, however important this might have been, if the question had arisen under the provisions of the

act of 1883, it is manifestly of no consequence whatever under the act of 1888. The only question that could possibly arise under that act would be whether a majority of the qualified voters of Shaw Township had signified their willingness to subject themselves to taxation for the purpose of paying the bonds here in question; and this is not only not denied, but is substantially alleged in the complaint. It is clear, therefore, that the provisions of the act of 1888 are final and conclusive of the questions presented in this case.

The judgment of this court is, that the order appealed from be affirmed.